# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT KNOXVILLE

| | | |
|---|---|---|
| WARREN FOWLER, | ) | |
| | ) | |
| *Petitioner*, | ) | |
| | ) | |
| v. | ) | No.:   3:11-cv-435-TAV-HBG |
| | ) | |
| MICHAEL J. DONAHUE, Warden, | ) | |
| | ) | |
| *Respondent*. | ) | |

## MEMORANDUM

This is a petition for the writ of habeas corpus, pursuant to 28 U.S.C. § 2254, filed by petitioner Warren Fowler ("petitioner").  The matter is before the Court on the answer to the petition filed by the Tennessee Attorney General on behalf of the respondent and petitioner's response thereto.  For the following reasons, the petition for the writ of habeas corpus will be **DENIED** and this action will be **DISMISSED WITH PREJUDICE**.

## I.      Standard of Review

A state prisoner is entitled to habeas corpus relief "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254.  Under Rule 8 of the Rules Governing Section 2254 Cases In The United States District Courts, the court is to determine, after a review of the answer and the records of the case, whether an evidentiary hearing is required.  If no hearing is required, the district judge is to dispose of the case as justice dictates.  If the record shows

conclusively that petitioner is not entitled to relief under § 2254, there is no need for an evidentiary hearing and the petition should be denied. *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986).

## II. Factual Background

Respondent has provided the Court with copies of the relevant documents as to petitioner's post-conviction proceedings. [Doc. 9, Answer, Attachment 1, Notice of Filing Documents, Addenda 1-2]. Petitioner pleaded guilty to attempted first degree murder and especially aggravated kidnapping and received concurrent sentences of twenty years. He subsequently filed a petition for post-conviction relief, in which he asserted various claims of ineffective assistance of counsel and that his guilty plea was not knowingly and voluntarily entered. The post-conviction petition was denied after an evidentiary hearing, and the Tennessee Court of Criminal Appeals affirmed. *Fowler v. State*, No. E2010-01027-CCA-R3-PC, 2011 WL 1304117 (Tenn. Crim. App. April 6, 2011) [Addendum 1, Doc. 3], *perm. app. denied, id*. (Tenn. July 13, 2011) [Addendum 2, Doc. 5].

The Tennessee Court of Criminal Appeals summarized the history of petitioner's guilty plea as follows:

> The Petitioner's convictions stem from his involvement in the kidnapping and attempted murder of Gary Stone. The State alleged that had the Petitioner's case gone to trial, they would have proven that the Petitioner and Carlton Brown attacked the victim in the Petitioner's home. After over-powering the victim, they bound him with duct tape and took him to the Petitioner's car. They transported the victim to another location, where they took the victim out of the car and threatened him again. The victim, who could partially observe what was happening through the duct

2

tape wrapped around his head, saw that the Petitioner was carrying a handgun. The Petitioner told the victim that "he was going to put one in him and ... set him on fire." The Petitioner shot the victim in the upper back and in the back of the head before leaving the victim. Once alone, the victim crawled to another location, where he summoned help.

The victim survived his injuries but had to undergo surgery to remove the bullet fragments from his skull. As a result of his injuries, the victim suffered from hearing loss and problems with his memory and speech. The victim also suffered "terrible anxiety," which forced him to seek treatment. The victim identified the Petitioner and Mr. Brown as his captors and participated in two preliminary hearings[1] relative to the Petitioner's case. In the investigation of the case, the Petitioner's car was impounded and searched. Inside the car, officers found the victim's watch and a piece of duct tape that was similar to the duct tape used to bind the victim. Officers also found shoe imprints from the rear passenger window of the Petitioner's car that were consistent with the victim's shoes.

[1]The Petitioner had two preliminary hearings because the first hearing was not properly recorded.

At the guilty plea submission hearing on April 30, 2007, the Petitioner was advised by the trial court that he would receive concurrent sentences of 20 years and that his sentence was "right in the middle of the range for each of [the] charges." The trial court also advised the Petitioner that he would have to serve 85 percent of his sentence before he would be eligible for parole. When asked if he was satisfied with trial counsel's representation, the Petitioner stated, "Pretty much." When asked if his "concerns" had been "relieved," the Petitioner stated, "They have." The Petitioner did not indicate that he was forced to plead guilty or that he did not wish to plead guilty. On the contrary, he answered all of the trial court's questions and took responsibility for his actions. After pleading guilty, the Petitioner timely filed a petition for post-conviction relief in which he claimed that trial counsel was ineffective and that he did not voluntarily plead guilty."

*Id.*, 2011 WL 1304117 at *1.

In support of his original petition for the writ of habeas corpus, petitioner alleged the following ten instances of ineffective assistance of counsel, as summarized by the Court:

1. Counsel failed to obtain and provide petitioner with discovery so petitioner could make an informed decision whether to accept the original 15-year plea offer or go to trial.

2. Counsel failed to explain to petitioner the lesser-included offenses that he could have been convicted of had he gone to trial, despite petitioner's request to do so.

3. Counsel failed to explain to petitioner the application of the 2005 Tennessee Sentencing Act to petitioner's case, including the applicability of enhancement and mitigating factors.

4. Counsel failed to advise petitioner that he was entitled to be sentenced by a jury had he gone to trial.

5. Counsel misled petitioner as to the percentage of his sentence he would have to serve and coerced petitioner into accepting the guilty plea based upon erroneous advice.

6. Counsel failed to obtain a continuance until after the court ruled on his motion to dismiss the indictment based on the loss of evidence.

7. Counsel failed to explain to petitioner that, had he gone to trial, the witnesses against him could have had their credibility impeached.

8. Counsel's failure to provide petitioner with discovery and to explain the 2005 Sentencing Act resulted in petitioner losing the plea offer of 15 years.

9. Counsel's ineffective assistance and lack of preparation resulted in petitioner entering a guilty plea that not voluntary, knowing, or intelligent.

10. The cumulative effect of counsel's errors constituted ineffective assistance.

4

Petitioner also alleged that the State disposed of crucial evidence prior to discovery or inspection by his attorney, specifically petitioner's automobile and its contents. Respondent contends he is entitled to judgment as a matter of law based on either procedural default or the findings of the state courts. In his amended petition, petitioner attempts to excuse his procedural default.

## III. Procedural Default

The doctrine of procedural default is an extension of the exhaustion doctrine. A state prisoner's petition for a writ of habeas corpus cannot be granted by a federal court unless the petitioner has exhausted his available state court remedies. 28 U.S.C. § 2254. This rule has been interpreted by the Supreme Court as one of total exhaustion. *Rose v. Lundy*, 455 U.S. 509 (1982). Thus, each and every claim set forth in the federal habeas corpus petition must have been presented to the state appellate court. *Picard v. Connor*, 404 U.S. 270 (1971). *See also Pillette v. Foltz*, 824 F.2d 494, 496 (6th Cir. 1987) (Exhaustion "generally entails fairly presenting the legal and factual substance of every claim to all levels of state court review."). Moreover, the substance of the claim must have been presented as a federal constitutional claim. *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996).

Petitioner cannot file another state petition for post-conviction relief. Tenn. Code Ann. § 40-30-102(c). Accordingly, he has no remedy available to him in the Tennessee state courts for challenging his conviction and is deemed to have exhausted his state remedies.

5

It is well established that a criminal defendant who fails to comply with state procedural rules which require the timely presentation of constitutional claims waives the right to federal habeas corpus review of those claims "absent a showing of cause for the non-compliance and some showing of actual prejudice resulting from the alleged constitutional violation." *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977). *Accord Engle v. Isaac*, 456 U.S. 107, 129 (1982) ("We reaffirm, therefore, that any prisoner bringing a constitutional claim to the federal courthouse after a state procedural default must demonstrate cause and actual prejudice before obtaining relief.").

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "When a state-law default prevents the state court from reaching the merits of a federal claim, that claim can ordinarily not be reviewed in federal court." *Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991)

Petitioner's ten claims of ineffective assistance of counsel were raised in his state post-conviction petition, as well as his claim that the State disposed of crucial evidence prior to discovery or inspection by his attorney. [Addendum 1, Technical Record of Post-Conviction Proceedings, vol. 1, pp. 1-43, Petition for Post-Conviction Relief]. On appeal from the denial of post-conviction relief, however, petitioner raised only the following claims: that counsel's failure to provide him with discovery caused him to make an uninformed decision to reject the State's 15-year offer; that counsel failed to explain the

6

application of the 2005 Tennessee Sentencing Act to petitioner's case; and that counsel's errors resulted in petitioner entering an involuntary guilty plea. [Addendum 2, Doc. 1, Brief of the Appellant, pp. 13-21].

Petitioner's claim that the State disposed of crucial evidence was not presented to the Tennessee Court of Criminal Appeals and has been procedurally defaulted. Likewise, the following claims of ineffective assistance of counsel were not presented to the Court of Criminal Appeals and have been procedurally defaulted:

2.      Counsel failed to explain to petitioner the lesser-included offenses that he could have been convicted of had he gone to trial, despite petitioner's request to do so.

4.      Counsel failed to advise petitioner that he was entitled to be sentenced by a jury had he gone to trial.

5.      Counsel misled petitioner as to the percentage of his sentence he would have to serve and coerced petitioner into accepting the guilty plea based upon erroneous advice.

6.      Counsel failed to obtain a continuance until after the court ruled on his motion to dismiss the indictment based on the loss of evidence.

7.      Counsel failed to explain to petitioner that, had he gone to trial, the witnesses against him could have had their credibility impeached.

10.      The cumulative effect of counsel's errors constituted ineffective assistance.

Petitioner contends that his procedural default should be excused because post-conviction counsel was ineffective in failing to pursue the claims of ineffective assistance of trial counsel on appeal. To that end, petitioner was allowed to amend his habeas petition to argue that he is not responsible for the procedural default of those claims.

Petitioner relies on the fairly recent Supreme Court decision in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012). *Martinez* was a case in which a state prisoner sought federal habeas corpus relief from his Arizona conviction for sexual conduct with a minor. Under Arizona law, a defendant can raise claims of ineffective assistance of trial counsel only in state collateral proceedings. Martinez's post-conviction attorney failed to raise his claim of ineffective assistance of trial counsel in his post-conviction proceedings. As a result, the federal district court found that Martinez was procedurally defaulted from raising that claim in his federal habeas corpus proceedings and that, under *Coleman v. Thompson*, 501 U.S. 722 (1991), the error by post-conviction counsel could not excuse the procedural default. The Court of Appeal for the Ninth Circuit affirmed.

The Supreme Court reversed and remanded, and held that in order to "protect prisoners with a potentially legitimate claim of ineffective assistance of trial counsel, it is necessary to modify the unqualified statement in *Coleman* that an attorney's ignorance or inadvertence in a postconviction proceeding does not qualify as cause to excuse a procedural default." *Martinez*, 132 S. Ct. at 1315. The Supreme Court considered the situation in which a state does not permit a claim of ineffective assistance of trial counsel to be raised on direct appeal but rather requires such a claim be raised in a collateral proceeding; the Supreme Court referred to such collateral proceedings as "'initial-review collateral proceedings.'" *Id*.

Consequently, the Supreme Court held that in states which require claims of ineffective assistance of trial counsel to be raised in an initial-review collateral

proceeding, failure of counsel in an initial-review collateral proceeding to raise a claim of ineffectiveness of trial counsel may provide cause to excuse the procedural default of such a claim. *Id.* The Supreme Court in *Martinez* thus crafted a narrow exception to *Coleman*: "*Coleman* held that an attorney's negligence in a postconviction proceeding does not establish cause, and this remains true *except* as to initial-review collateral proceedings for claims of ineffective assistance of counsel *at trial*." *Id.* at 1319 (emphasis added).

*Martinez* does not apply in petitioner's case because he did not go to trial, but instead pleaded guilty. More importantly, the Supreme Court itself held that *Martinez* applies only with respect to "initial-review collateral proceedings" and not "other kinds of collateral proceedings," "including appeals from initial-review collateral proceedings." *Id.* at 1316, 1320. Petitioner is alleging the ineffective assistance of counsel on appeal from the denial of post-conviction relief and thus *Martinez* is inapplicable.

Accordingly, the Court will not consider those claims that have been procedurally defaulted. With respect to the remaining claims, respondent contends he is entitled to judgment as a matter of law based upon the state court findings.

## IV.    State Court Findings

Pursuant to 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a petitioner may not obtain federal habeas corpus relief with respect to a claim that was adjudicated on the merits in a state court proceeding unless the state court decision (1) was contrary to, or involved an

9

unreasonable application of, clearly established federal law, or (2) was not reasonably supported by the evidence presented to the state court. In addition, findings of fact by a state court are presumed correct, and petitioner must rebut the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e).

The Supreme Court, in *Williams v. Taylor*, 529 U.S. 362 (2000), clarified the distinction between a decision "contrary to," and an "unreasonable application of," clearly established Supreme Court law under § 2254(d)(1). A state court decision is "contrary to" Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Id*. at 413. A state court decision "involves an unreasonable application of clearly established Federal law" only where "the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409. A federal habeas court may not find a state adjudication to be unreasonable "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411.

Recent case law demonstrates a high bar that a habeas petitioner must meet under the standard set by the AEDPA. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786

(2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  "[A] habeas court must determine what arguments or theories supported or ... could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court."  *Id.*  As the Supreme Court has acknowledged: "If this standard is difficult to meet, that is because it is meant to be."  *Id.  See also Renico v. Lett*, 130 S. Ct. 1855, 1866 (2010) ("AEDPA prevents defendants -- and federal courts -- from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts."); *Peak v. Webb*, 673 F.3d 465, 472 (6th Cir. 2012) ("[T]he Supreme Court has very recently made abundantly clear that the review granted by the AEDPA is even more constricted that AEDPA's plain language already suggests.") (citing *Harrington v. Richter*, 131 S. Ct. at 786).

Petitioner has failed to rebut, by clear and convincing evidence, the findings of the state courts and they will be presumed correct by this Court.  In light of the foregoing, the Court will consider petitioner's remaining claims of ineffective assistance of counsel.

## V.    Discussion of Claims on the Merits

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-part standard for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.   Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's

11

errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id*. at 687.

To establish that his attorney was not performing "within the range of competence demanded of attorneys in criminal cases," *McMann v. Richardson*, 397 U.S. 759, 771 (1970), petitioner must demonstrate that the attorney's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. at 687-88. In judging an attorney's conduct, a court should consider all the circumstances and facts of the particular case. *Id*. at 690. Additionally, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). A finding of serious attorney incompetence will not justify setting aside a conviction absent prejudice to the defendant so as to render the conviction unreliable. *Id*. at 691-92.

The two-part test of *Strickland* also applies to ineffective assistance of counsel claims in cases involving guilty pleas. As the Supreme Court further reiterated post-*Strickland*:

> We hold, therefore, that the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel. In the context of guilty pleas, the first half of the *Strickland v. Washington* test is nothing more than a restatement of the standard of attorney competence already set forth in *Tollett v. Henderson*, [411 U.S. 258 (1973)], and *McMann v. Richardson*, [397 U.S. 759 (1970)]. The second, or "prejudice," requirement, on the other hand, focuses on whether

12

counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985) (footnote omitted).

Petitioner's remaining claims concern counsel's alleged failure to provide petitioner with discovery or explain the 2005 Sentencing Act, so he could decide whether to accept the original plea offer of 15 years, and the claim that counsel's alleged ineffective assistance and lack of preparation resulted in an involuntary guilty plea. The Tennessee Court of Criminal Appeals summarized the claims as follows:

> The Petitioner raised numerous allegations in his petition for post-conviction relief but only raised two issues on appeal to this court. The Petitioner contends that trial counsel's failure to provide him with the discovery materials caused him to make an uninformed decision when he rejected the State's 15–year offer. The Petitioner further contends that trial counsel erroneously advised him that the State's subsequent 20–year offer was the least sentence that he could receive and that as a result of that advice and counsel's unpreparedness, he accepted the 20–year offer. The State responds that the Petitioner had ample information when he decided to reject the State's 15–year offer. The State further responds that the Petitioner was aware of the possible sentencing ranges when he pled guilty and that the Petitioner made an informed decision to plead guilty. The State asserts that the Petitioner has also failed to prove that but for counsel's errors, he would have insisted on going to trial.

*Fowler v. State*, 2011 WL 1304117 at *4.

In considering these allegations, the appellate court first summarized the evidence adduced at the evidentiary hearing and the findings of the trial court:

> At the evidentiary hearing, the Petitioner testified that he hired trial counsel two days after he was arrested. The Petitioner stated that trial counsel met with him approximately six times and that sometimes trial

13

counsel sent the private investigator to speak with him. He stated that he spent a total of 10 to 12 hours with trial counsel before he pled guilty. Trial counsel told the Petitioner that if he were convicted, he would likely receive a sentence of 40 years. The Petitioner asserted that trial counsel's calculation of his possible sentence was incorrect because he had several charges, which trial counsel never discussed with him. He stated that he was charged with attempted first degree murder, especially aggravated kidnapping, and aggravated robbery and that he did not learn about the aggravated robbery charge until his second preliminary hearing.

The Petitioner admitted that the victim testified at both preliminary hearings and was able to identify him. The Petitioner stated that he noticed contradictions in the victim's testimony regarding "who played what role" in the victim's kidnapping and attempted murder. He stated that trial counsel received the discovery materials on March 28, 2007, but that when he asked trial counsel for the materials on April 5, 2007, trial counsel did not show him the materials. At that time, trial counsel only showed him the photographs of the victim and told him that he would likely be convicted based on the photographs. On that same day, trial counsel advised him that he should accept a 15–year offer from the State. The Petitioner told trial counsel that he wanted to see the discovery materials before he made his decision and that trial counsel told him that he only had four days to make his decision. The Petitioner stated that on April 9, 2007, trial counsel asked him if he would take the deal. The Petitioner refused the offer because he had not seen the discovery materials.

The Petitioner testified that the victim stated at the preliminary hearing that a cellular telephone had been used to record the abduction. The Petitioner said that the telephone was not listed as one of the items found in the vehicle and that he believed that the absence of the telephone might have been beneficial for his defense. The Petitioner told trial counsel to inspect the vehicle, but trial counsel did not file a motion to inspect the vehicle until the vehicle had already been auctioned and was no longer available. The Petitioner admitted that trial counsel filed a subsequent motion to suppress the items found in the vehicle but that trial counsel never sought a ruling on the motion. When trial counsel finally showed the Petitioner the discovery materials, the Petitioner learned that the cellular telephone had been found in the vehicle.

The Petitioner testified that he and trial counsel never talked about a theory of defense and that trial counsel simply told him that he would be convicted based upon the photographs of the victim. The Petitioner stated

that while the photographs depicted the victim, he was not in any of the photographs; therefore, he did not believe that the State had enough evidence to convict him. The Petitioner stated that the victim's identification was faulty because the victim had testified that his eyes had been "duct taped and bound." The Petitioner stated that four days before trial, Mr. Brown agreed to be a State's witness. Trial counsel told the Petitioner that they did not have an adequate defense. The Petitioner told trial counsel to ask for a continuance, but trial counsel refused, stating that the trial court would not allow them to continue the case. Trial counsel told the Petitioner that the trial court might continue the case if the Petitioner fired him; however, he refused to refund the Petitioner any of the money that had already been paid for the defense.

The Petitioner testified that trial counsel did not advise him regarding any of the lesser-included offenses; failed to subpoena a witness, Todd Fawver, that had contradicted the victim's testimony; and told him that the minimum sentence he could receive was 20 years. The Petitioner stated that he ultimately decided to accept the 20–year offer because he believed he was receiving the minimum sentence and because he believed that trial counsel was not prepared to represent him at trial.

On cross-examination, the Petitioner admitted that the victim had identified him. The Petitioner stated that he never saw any statements from Mr. Brown that would have corroborated the victim's testimony and identification. When confronted with the photographs of the victim, the Petitioner admitted that he had received the photographs. The Petitioner admitted that the medical records reflected that the victim had two bullet wounds and that the records were consistent with the victim's testimony regarding his injuries. The Petitioner admitted that the victim had suffered serious bodily injury and had been kidnapped and robbed. When asked if he believed that he would prevail at trial given the victim's testimony, the medical records, the testimony from other witnesses and Mr. Brown, the Petitioner stated, "I feel confident of going to trial with that."

The Petitioner stated that he felt coerced into pleading guilty and that trial counsel did not have his "best interest at heart ... and didn't take his time to prepare [a] defense for a trial." The Petitioner admitted that he had received a sentence that was less than the potential sentence he could have received had he been convicted. The Petitioner admitted that he told the trial court that he understood the agreement and that he wanted to plead guilty. The Petitioner stated that he believed that he could have been convicted of a lesser-included offense if he had decided to proceed with a

15

trial. The Petitioner stated that he also believed that he could have received a lesser sentence. The Petitioner admitted that he had a criminal history, that the trial court could have applied several enhancement factors when sentencing him, and that the trial court could have concluded that he was a dangerous offender and ordered him to serve his sentences consecutively.

Trial counsel testified that the Petitioner never told him that he was innocent and that the Petitioner was more concerned with "trying to figure how he could avoid being convicted." Trial counsel stated that while he may not have shown the Petitioner all of the evidence and discovery materials relevant to the case, he reviewed the evidence and talked with the Petitioner about the evidence. Trial counsel stated that he could not recall whether he "went over the indictment page by page" with the Petitioner but that they discussed the "three serious charges that he had against him." Trial counsel stated that the Petitioner refused the 15–year offer because he was "just trying not to think about" his case.

Trial counsel testified that he told the Petitioner about the 15 to 25–year range of punishment for his charges and that if the Petitioner were convicted, the trial court, starting at a sentence of 20 years, would lower or increase his sentence based upon any potential enhancement or mitigating factors. He admitted that his advice was incorrect given the relevant changes in the 2005 Sentencing Act that were applicable to the Petitioner's case. However, he said that he told the Petitioner that the minimum sentence he could receive was 15 years. He said that if the case had proceeded to trial, he was prepared to try the case but that he told the Petitioner that he thought he would be convicted. He said that the Petitioner did not want to go to trial but that the Petitioner wanted the 15–year offer back. Trial counsel said that he attempted to get the 15–year offer back but that the prosecutor refused and would only offer a sentence of 20 years.

Trial counsel said that after reviewing all of the photographs, he attempted to inspect the vehicle. However, the vehicle had already been sold. He stated that the photographs of the abduction were taken at the apartment, not in the vehicle. He stated that the victim's testimony at the second preliminary hearing was not "radically different" from his testimony at the first hearing and that the victim identified the Petitioner at both hearings.

On cross-examination, trial counsel admitted that the 20–year offer would have been removed had he sought to continue the case. Trial counsel stated that the State had a "lot of proof" and that "it was a strong case." He

said that there were pictures of streaks in the vehicle that matched the "ridges on the victim's tennis shoes." He admitted that the trial court could have considered "aggravating circumstances" when sentencing the Petitioner.

In a written order, the post-conviction court found that the evidence against the Petitioner would have been sufficient to convict him had he not chosen to plead guilty and that the Petitioner, against the advice of counsel, chose to reject the 15–year offer. The postconviction court also found that the Petitioner "failed to prove that, but for [trial counsel's] performance he would have accepted the 15–year offer." The post-conviction court further found that the Petitioner "failed to prove that but for [trial counsel's] actions the result (the 20–year prison sentence) would have been any different."

*Id*. at **2-4.  The Court has reviewed the transcript of evidence at petitioner's post-conviction hearing.  [Addendum 1, Vol. 2, Transcript of Post-Conviction Evidentiary Hearing, pp. 1-123].  The summary of testimony is supported in the record.

The state appellate court concluded that petitioner did not receive ineffective assistance of counsel.  The Court notes that in doing so, the Tennessee Court of Criminal Appeals observed that *Strickland v. Washington*'s two-prong test is the standard for considering ineffective assistance claims.  *Fowler v. State*, 2011 WL 1304117 at *5.

With respect to the rejection of the plea offer of 15 years, the Tennessee Court of Criminal Appeals determined that petitioner was aware of the 15-year offer and made the decision to reject it, and that counsel was not ineffective in that regard:

The Petitioner asserts that he rejected the 15–year offer because of counsel's refusal to provide the discovery materials and that as a result of counsel's failure, he made an uninformed decision to reject the offer. However, trial counsel testified that the Petitioner was aware of the evidence against him and had been told the range of punishment. Additionally, the presence or absence of the cellular telephone was not a matter of great importance given the fact that the victim had twice

17

identified the Petitioner as the leader in the commission of the offense. More importantly, trial counsel relayed the offer to the Petitioner. Accordingly, the Petitioner is not entitled to relief on this issue.

*Id*. at *5 (internal citation omitted).  This finding is supported in the record.

Petitioner testified that he received the plea offer of 15 years but rejected it because he did not believe the evidence was sufficient to tie him to the crime, despite the victim's identification of him.   [Addendum 1, Vol. 2, Transcript of Post-Conviction Evidentiary Hearing, pp. 22-29].  Trial counsel testified that petitioner was aware of but rejected the 15-year offer because he was upset at having to plead and was trying to avoid the issue by not thinking about it.  [*Id*. at 105].

Regarding the claim that trial counsel was not prepared for trial and that is why petitioner agreed to plead guilty, the Tennessee Court of Criminal Appeals was not persuaded:

The Petitioner next asserts that he would have proceeded to trial if not for counsel's unpreparedness. However, trial counsel stated that he was prepared to proceed with a trial but that he had advised the Petitioner that they would not prevail. Indeed, the evidence reflects that trial counsel's advice was likely correct given the victim's identification of the Petitioner on two separate occasions. Accordingly, we conclude that the Petitioner has failed to prove his allegation of fact by clear and convincing evidence.

*Fowler v. State*, 2011 WL 1304117 at *6.  This finding is supported in the record.

Trial counsel testified that he was prepared to go to trial, having looked at all the evidence and spoken in person with the victim, but when he learned the co-defendant was going to testify against petitioner, counsel became convinced that petitioner would not

18

prevail at trial.  [Addendum 1, Vol. 2, Transcript of Post-Conviction Evidentiary Hearing,

p. 109].  It was afterward that petitioner agreed to plead guilty.  [*Id*. at 110-111].

As to the claim regarding the 2005 Sentencing Act, the Tennessee Court of

Criminal Appeals found that petitioner's decision to accept the 20-year plea offer was not

the result of erroneous advice:

> The Petitioner further asserts that he would have proceeded to trial
> had counsel not given him erroneous advice regarding the sentencing
> procedure that the trial court would follow. We acknowledge that trial
> counsel erroneously stated that the trial court would begin its sentencing
> decision at the mid-point of the range for his Class A felonies before
> considering the enhancement and mitigating factors. However, trial counsel
> told the Petitioner that the minimum sentence he could receive was 15
> years. Moreover, we are not convinced that if the Petitioner knew that the
> trial court would begin its sentencing decision at the lowest point in the
> range, the Petitioner would have proceeded to trial. Trial counsel stated that
> the Petitioner never intended on proceeding with a trial and never asserted
> that he was innocent but that the Petitioner was merely upset that he could
> no longer accept the 15–year offer. The trial court advised the Petitioner
> that he was receiving a sentence in the midpoint of the range because he
> was pleading guilty to two Class A felonies as a Range I offender.
> Accordingly, we conclude that the Petitioner has failed to prove that he
> would have proceeded to trial if not for trial counsel's erroneous advice.

*Fowler v. State*, 2011 WL 1304117 at *6 (citing Tenn. Code Ann. § 40-35-112(a)(a)

(providing that the sentencing range for a Range I offender convicted of a Class A felony

is "not less than fifteen (15) nor more than twenty-five (25) years")).  This finding is also

supported in the record.

Petitioner acknowledged that he was originally charged with three Class A

felonies, each carrying a possible sentence of 25 years; that if convicted the court could

have given him consecutive sentences, for a total possible sentence of 75 years in prison;

19

and that he received the benefit of the plea bargain by pleading guilty to two Class A felonies in return for a 20-year sentence. [Addendum 1, Vol. 2, Transcript of Post-Conviction Evidentiary Hearing, pp. 38-41]. He also acknowledged that prior to pleading guilty, he was aware that his co-defendant had offered to testify against him. [*Id*. at 51-52]. Petitioner also knew that the victim as well as the investigating officers would testify against him and that the photographs of the victim and the victim's medical records would be admitted into evidence against him. [*Id*. at 55-70].

Petitioner's trial counsel testified that he advised petitioner that the range of punishment he was facing was 15-25 years, and that the minimum sentence was 15 years. [*Id*. at 103]. Counsel admitted that he erroneously advised petitioner that, if he went to trial and was convicted, the sentencing judge would start at the mid-point of 20 years and go up or down depending on mitigating and aggravating factors. [*Id*. at 103-104]. Counsel was not aware that, because of a change in the law, the sentencing judge would start at the presumptive minimum of 15 years. [*Id*. at 104]. Counsel also testified as to how strong the case against petitioner was and that he had discussed this fact with petitioner. [*Id*. at 118-119].

Based upon the foregoing, the Court concludes that the state courts' determinations that petitioner received the effective assistance of counsel were neither contrary to, nor did they involve an unreasonable application of, federal law as established by the Supreme Court in *Strickland v. Washington*. Petitioner is not entitled to relief on his claims of ineffective assistance of counsel. Given that conclusion,

petitioner cannot support his claim that his guilty plea was involuntary based upon ineffective assistance of counsel.

## VI. Conclusion

The petition for habeas corpus relief will be **DENIED** and this action will be **DISMISSED WITH PREJUDICE**. Petitioner having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE**. 28 U.S.C. § 2253(c); Rule 22(b) of the Federal Rules of Appellate Procedure. The Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Rule 24 of the Federal Rules of Appellate Procedure. The Court will further **DENY** petitioner leave to proceed in forma pauperis on appeal.

**AN APPROPRIATE ORDER WILL ENTER.**

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE